## GIFFEN v. COMMISSIONER OF INTERNAL REVENUE. (Two Cases).

### Nos. 12695, 12696.

United States Court of Appeals
Ninth Circuit.

June 22, 1951.

As Amended on Denial of Rehearing
Aug. 23, 1951.

---

Joseph C. Kimble, T. Newton Russell, and Oliver M. Jamison, all of Fresno, Cal. (Howard B. Thomas, William N. Snell, Gilbert H. Jertberg, all of Fresno, Cal., of counsel), for petitioners.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Edward J. P. Zimmerman and S. Dee Hanson, Sp. Assts., to the Atty. Gen., for respondent.

Before MATHEWS and STEPHENS, Circuit Judges, and FEE, District Judge.

JAMES ALGER FEE, District Judge.

The Commissioner of Internal Revenue made a deficiency assessment against Russell Giffen and Ruth P. Giffen, respectively, upon tax returns filed by each individually for the calendar years 1942, 1943 and 1944. These returns reflected a showing of a partnership, "Russell Giffen and Company," consisting of Russell Giffen, Ruth P. Giffen and their four children, Patricia Giffen, born June 27, 1925, Michael Giffen, born March 23, 1926, Carolyn Giffen, born November 13, 1927, and Price Giffen, born October 24, 1928. They were based upon the agricultural year ending October 14. The taxpayers filed petitions for redetermination. The Tax Court held that "purported gifts by Russell and Ruth Giffen to their four children were not complete and absolute but were made on condition that the property remain in the farm business and under the absolute management of petitioner Russell Giffen in respect of both capital and income therefrom."

■ The Court also found that "petitioners did not really and truly intend to join together with their four children in the conduct of the business of Russell Giffen and Company as a bona fide partnership at any time from October 15, 1941, through March 31, 1944." Each of these was a question of fact.

Russell Giffen and Ruth P. Giffen, husband and wife, owned a large body of agricultural land in California, together with the personal property required to operate the land. Both forms of property were held by the community. The proceeds supported the husband and wife and the four minor children.

On July 3, 1941, the husband and wife, by written agreements, transmuted all this farming property from property held in community into property held by them as tenants in common of equal shares. The details of the over-all plan, of which this was the initial move, were worked out later. On October 14, 1941, Ruth Giffen was appointed guardian of the estates of her four minor children. Then, Russell Giffen and Ruth P. Giffen jointly executed an instrument conveying to each of the four children, severally, one-sixteenth interest in the whole property, real and personal, subject to one-sixteenth of the indebtedness on the whole, but expressly conditioned upon a court order turning the possession and use of all this property, real and personal, of each minor to a limited partnership. These alleged gifts were expressly conditioned upon reinvestment in the partnership. The Probate Court thereupon ordered the acceptance of the gifts so conditioned. Federal gift taxes were paid thereon. According to the agreement executed in furtherance of the plan by Russell Giffen, Ruth P. Giffen, for herself, Ruth P. Giffen, as guardian of Patricia Giffen, Ruth P. Giffen, as guardian of

Michael Giffen, Ruth P. Giffen, as guardian of Carolyn Giffen, and Ruth P. Giffen, as guardian of Price Giffen, the entire usufruct possession and exclusive control and management of all the property were committed to Russell Giffen. He was given full power to conduct the business. He drew a salary of $25,000.00 a year. He had full power to retain all income from the operation at his sole discretion. Neither Ruth P. Giffen nor Ruth P. Giffen, as guardian, nor any of the children could assign an interest in the operation or business. In the event of dissolution of the arrangement, Russell Giffen could purchase the interest of the other parties at appraised value. This agreement was subject to the payment of a heavy present indebtedness and continued borrowings for current running expenses, and was entered subject to the express condition made by the creditor that all the moneys realized be applied upon the indebtedness. The dubious and contingent interest received was incapable of being considered a capital base upon which to rest a valid partnership with the children. The relation was to continue for ten years, unless sooner terminated by death of a partner. This was in standard form of a limited partnership with usual incidents.

It is clear enough from this recital that none of the children received any interest in this property. If the physical property had been transferred, still the use and possession was held so that there could be no beneficial interest until the ten years had expired. The property was so covered with indebtedness that neither the children nor their guardian had any possibility of an interest therein during the years in question. If there had been a purchase on appraisal by Giffen, no value could have been found during the tax years in question. These supposed interests could not have been sold. If these were subject to purchase, there would have been no buyer. The minors received nothing more than a bare expectancy by this transaction. Any interest which any one of them had was conditional and evanescent. There was here no business purpose involved. The children contributed no services to the enterprise. The contributions to capital were made solely by husband and wife. There was no new capital contributed by anyone.

Before the transaction took place, Russell Giffen and Ruth P. Giffen were tenants in community of the property, and Russell Giffen was the manager thereof. The property was under indebtedness which exceeded its present value. Russell Giffen was supporting his children from the operation.

After the transaction, Russell Giffen and Ruth P. Giffen were the owners of the property still subject to the same indebtedness. Russell Giffen was supporting his children from the farming operation. He was exercising a more absolute control than he had ever had before. This compass hand sets the cardinal points. Instead of giving up any of the incidents of ownership, he had acquired powers which he did not have as manager for the community. These gifts were then not complete and unconditional. The only income drawn besides the salary of Russell Giffen was sufficient to pay income taxes computed upon the shares. Payments were made on indebtedness but there was still a large amount owing at the end of the period in question.

Therefore, the attempt to use this intimate family group under a contract of this type, in order to minimize a just tax burden on this farming business, must fail. The children acquired no interest in the property by the transaction, and acquired none during the tax years in question. This disposes of the argument that, since each has contributed capital, the income of that money must be charged to the one so contributing.

The Tax Court held that the taxpayers did not intend to enter into a partnership with their children and that there was no business purpose in the arrangement. In the nature of things, there was an actual partnership between Ruth P. Giffen and Russell Giffen, and the property of each was used equally in the operation. Each contributed an equal share of capital and agreed that the fiscal agricultural year should be used as a basis. They did not in good faith intend a partnership with the children, but were in fact themselves ten-

ants in common operating together as partners. The Commission therefore properly assessed the whole income of the partnership to the two in equal shares and upon the basis of the agricultural year as reflected in their respective individual returns for the calendar years.

Affirmed.